UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LaDEAN DANIELS,  *Plaintiff*, | ) ) ) | 3:23-cv-441 (SVN) |
| v. | ) ) | |
| FEDER, *et al.*,  *Defendants*. | ) ) ) ) | October 11, 2023 |

# INITIAL REVIEW ORDER

*Pro se* plaintiff, LaDean Daniels, an unsentenced inmate formerly incarcerated at Corrigan Correctional Institution ("Corrigan"),[1] filed his action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* He names nine defendants: Dr. Ingrid Feder, Registered Nurse ("RN") Carlie, RN J. Brennan, Nurse Supervisor K. Phillips, Warden Martin, RN Cristien, Nurse Jane Doe, RN Yvonne, and RN Jullian. Plaintiff seeks damages from Defendants in their individual and official capacities, as well as injunctive relief, for violation of his rights.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

---

[1] The Connecticut Department of Correction's inmate locator notes that Plaintiff is currently incarcerated at Cheshire Correctional Center and remains unsentenced. The Court takes judicial notice of this relevant matter of public record. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *see Goss v. City of New London*, No. 3:20-CV-01507(SALM), 2022 WL 375462, at *1 n.1 (D. Conn. Feb. 8, 2022) (taking judicial notice of the date the plaintiff was sentenced according to the State of Connecticut DOC Inmate Information website).

§§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows.

## I.     FACTUAL BACKGROUND

While the Court does not set forth all of the facts alleged in Plaintiff's Complaint, it summarizes his basic factual allegations here to give context to its ruling below. When conducting an initial review pursuant to 28 U.S.C. § 1915A(b), the Court "must accept as true all factual matters alleged in a complaint."  *See Dehaney v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624 at *3 (D. Conn. June 20, 2017).

The incidents underlying this action occurred while Plaintiff was incarcerated at Corrigan. Plaintiff suffers from a deformed foot, more specifically a planta flex foot, and a short leg. Compl., ECF No. 1 ¶ 3.  He also suffers from degenerative disc disease of the lumbar spine, sciatica, and neuropathy on the right side of his body.  *Id.* at 24.  Further, he has been diagnosed with PTSD, anxiety associated with depression, bipolar disorder, and antisocial personality disorder.  *Id.*

Upon his arrival at Corrigan, RN Doe and a correctional officer confiscated his high-top

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement," does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (internal quotation marks omitted).

sneakers and orthopedic lift. Plaintiff explained that he was unable to walk well without his lift and adequate footwear, but he was told to "make d[o]" without them. *Id.* ¶¶ 2–3. They told Plaintiff he would need to have the medical department approve the sneakers and lift. *Id.* ¶ 4.

Plaintiff asked to be housed in a medical unit until he could get adequate footwear and his lift. The request was granted for the evening of May 15, 2020. *Id.* ¶¶ 5–6. A few minutes after Plaintiff requested to see the on-call doctor about his footwear, a correctional officer told Plaintiff that medical staff had determined that his footwear was not medically needed. As Plaintiff could not fit into standard prison footwear, he was given slippers and told he was being moved to general population. *Id.* ¶ 7.

On May 15 and 16, 2020, Plaintiff submitted several request forms asking to be seen in the medical unit because he had no footwear and his disability required that he wear his footwear and lift. He was not seen. *Id.* ¶ 8. When Plaintiff explained his situation to the nurses who delivered medication to his housing unit, they told him to wait for sick call. *Id.* ¶ 9.

Plaintiff's ankle does not bend and, as a result, he walks on the front part of his foot. Plaintiff developed a swollen front foot that caused extreme pain. On May 22, 2020, the pain was so severe that Plaintiff requested mental health treatment. He was placed on Behavior Observation Status ("BOS"), in a cell with no clothing and only a safety blanket, for four days. He did not receive any medical attention. *Id.* ¶ 11. The pain was so severe that Plaintiff was unable to sleep for the next three days. He explained his situation to Nurses Yvonne, Amy, and Jullian but they all declined to get involved. *Id.* ¶ 12.

On the third day in BOS, Plaintiff lost consciousness while trying to get to the toilet. He also vomited and urinated on himself. *Id.* ¶ 13. Lieutenant Billario, Officer Kirkwood, RN

Yvonne, and RN Jullian rushed to the cell. When Plaintiff could not stand up quickly, RN Jullian said that Plaintiff's actions were "just behavioral." *Id.* ¶ 14. Plaintiff was left in his cell and not afforded the opportunity to clean himself or the cell.

On May 26, 2020, Plaintiff showed RN Cristien his foot when she was passing his cell. She told him he only needed Bacitracin, an antibiotic ointment, and applied some to his foot. *Id.* ¶ 15. Plaintiff stated that there was a knot in the front of his foot that was pressing on a nerve and that it caused a sharp pain as it grew larger. RN Cristien thought it might be an abscess but would not arrange for Plaintiff to be seen by the on-call doctor. *Id.* ¶ 16. Plaintiff stopped Warden Martin while he was touring the restrictive housing unit where Plaintiff was housed. Warden Martin told Plaintiff to send him a request form and he would look into the matter. *Id.* ¶ 23. Later than day, Plaintiff was returned to general population.

Two days later, Plaintiff felt a sharp pain as he put his foot on the floor and observed blood and puss coming from between his toes. The unit officer called for medical care. *Id.* ¶ 18. RN Jullian came to Plaintiff's cell door about twenty minutes later with Bacitracin, an antibiotic ointment, and a band-aid. RN Jullian gave Plaintiff Bacitracin and told Plaintiff to cover his foot with the band-aid. She stated that it was not an emergency and told Plaintiff he did not need to see a doctor. *Id.* ¶ 19.

On May 29, 2020, Plaintiff showed his foot to Nurse Melissa. She immediately said that Plaintiff needed to be admitted. *Id.* ¶ 21. Plaintiff was taken to the medical unit and placed on IV antibiotics to treat the infection. Medical staff ignored Plaintiff's requests to be taken to a hospital. *Id.* ¶ 22.

On June 5, 2020, Warden Martin responded to Plaintiff's May 31, 2020, request form

4

concerning his sneakers and orthopedic lift. Warden Martin stated that he and Dr. Feder had inspected Plaintiff's orthopedic lift and sneakers and determined that they did not fit his medical needs. Warden Martin, therefore, denied Plaintiff's request for the lift and shoes. *Id.* ¶ 24.

On June 1, 2020, APRN Jane Doe saw Plaintiff's foot and immediately ordered him taken to the emergency room. *Id.* ¶ 25. At the hospital, Plaintiff refused to consent to surgery because the doctor told him he would need to remove the foot, presumably due to infection. A surgeon was called. She told Plaintiff that she would try to just clean out the infection but if the infection had spread to his bones, she would have to remove the foot to save his life. She convinced Plaintiff to undergo surgery to try to save his foot. The surgeon commented that Plaintiff would not have needed surgery if the abscess had been treated sooner. *Id.* ¶ 26.

Following surgery, Plaintiff underwent several weeks of rehabilitation, during which he was hopping on one foot. This action exacerbated Plaintiff's other medical conditions, including degenerative disc disease of the lumbar spine, sciatica, neuropathy, and chronic muscle spasms. *Id.* ¶ 27. The surgery left Plaintiff with numbness in his foot and toes and muscle and nerve pain in his foot. He became dependent on pain management to walk. The way he walked caused his hip to become misaligned and caused severe nerve pain and chronic muscle spasms. *Id.* ¶ 28.

When Plaintiff submitted grievances complaining about deliberate indifference to his medical needs, grievance coordinator Brennan improperly handled the grievances by returning them to Plaintiff and incorrectly stating he did not follow proper procedures. *Id.* ¶ 29. Nurse Supervisor Phillips also told Plaintiff she was not happy with the language used in the grievances he had filed. *Id.* ¶ 33.

In late July 2020, Warden Martin and Dr. Feder determined that there was no appropriate

footwear available in the commissary and issued a medical pass that would enable Plaintiff to order footwear from an outside vendor. *Id.* ¶ 32. Plaintiff ordered black high-top sneakers from an approved catalog. When the sneakers arrived, custody staff at Corrigan refused to release them to Plaintiff even though he had a medical pass approving his ordering footwear from the outside vendor. *Id.* ¶¶ 34–35. The unit property officer and grievance coordinator told Plaintiff he could not receive the sneakers because Warden Martin was not happy that Plaintiff had involved the medical unit, despite the fact that Warden Martin and Dr. Feder had determined Plaintiff could be issued a medical pass to purchase the sneakers. *Id.* ¶ 36.

When Plaintiff's footwear had not been issued to him for over a month, he spoke with Dr. Feder who said she would look into the situation and asked Plaintiff to send her a follow-up request. *Id.* ¶ 37. Dr. Feder responded to the request and said that Nurse Supervisor Phillips would deal with the issue. *Id.* ¶ 38. Plaintiff was transferred to another facility in slippers, and, at the end of August 2020, he finally received his sneakers. *Id.* ¶ 39.

Plaintiff seeks compensatory and punitive damages, and to "continue pain management." *Id.* at 25.

    **II.**    **DISCUSSION**

Plaintiff claims that Defendants violated his rights under the Eighth, Eleventh, and Fourteenth Amendments, as well as the ADA. ECF No. 1 at 25.

        A.  <u>Eighth and Fourteenth Amendments (Deliberate Indifference to Medical Needs)</u>

Plaintiff is an unsentenced inmate. Thus, his deliberate indifference claims are cognizable under the Fourteenth Amendment, not the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d

17, 29 (2d Cir. 2017) (recognizing that deliberate indifference claims of sentenced inmates are considered under the Eighth Amendment while deliberate indifference claims of pretrial detainees are considered under the Fourteenth Amendment). All Eighth Amendment claims are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

To demonstrate the required constitutional deprivation to state a claim for deliberate indifference to serious medical needs, a detainee must show that his medical need was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* A "sufficiently serious" deprivation can exist if the detainee suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2003). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worth of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

Plaintiff alleges that his foot condition prevented him from walking properly and the

7

untreated abscess caused severe pain and required surgery, possibly amputation. For purposes of initial review, the Court considers Plaintiff to have plausibly alleged that he suffered from a serious medical need.

In order to state a Fourteenth Amendment deliberate indifference claim, the Court must also consider the conduct of the defendant, which is assessed objectively. "[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Negligence is insufficient to satisfy this component. *Id.* at 36. Distinguishing between negligent and reckless medical care is difficult when the court considers only the allegations in the complaint, though courts frequently consider the "degree of risk associated with the negligent treatment," and have found reckless conduct where the plaintiff did not receive treatment for a documented injury. *King v. Falco*, No. 16 CV 6315(VB), 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (quoting *Man Zhang v. City of New York*, No. 17 Civ. 5415 (JFK), 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018)). The Court now examines whether Plaintiff has sufficiently alleged, for purposes of initial review, that each Defendant acted intentionally or recklessly in connection with his health condition.

### 1. Nurse Jane Doe

Plaintiff alleges that Nurse Jane Doe took his sneakers and lift upon admission to Corrigan and told Plaintiff that he must contact the medical unit to have the items approved for his use. Plaintiff alleges that he explained to Nurse Doe that he could not ambulate well without the footwear due to his medical conditions. In light of Plaintiff's allegation that Nurse Doe was made

8

aware of his problems with ambulation absent the sneakers and lift, there is a question whether Nurse Doe acted recklessly in confiscating the items. The Fourteenth Amendment deliberate indifference claim against Nurse Jane Doe may therefore proceed.

### 2. *Nurses Yvonne, Cristien, and Jullian*

Plaintiff alleges that Nurses Yvonne, Cristien, and Jullian failed to provide adequate treatment for his foot pain and the abscess on his foot. As a result of their failure to provide adequate treatment, Plaintiff required emergency surgery and nearly lost his foot. As Plaintiff alleges that he repeatedly told these nurses about his severe pain, but they did not provide any effective treatment, he has sufficiently stated plausible claims under the Fourteenth Amendment for deliberate indifference to medical needs against these three nurses.

### 3. *Dr. Feder and Warden Martin*

Plaintiff alleges that, when he spoke to Warden Martin about the lack of his sneakers and orthopedic device, Warden Martin said to file an inmate request and he would look into the matter. Plaintiff alleges that Warden Martin and Dr. Feder later examined the items and denied Plaintiff's request because the items did not fit Plaintiff's medical needs. Plaintiff further alleges that, in July 2020, Warden Martin and Dr. Feder determined that there was no appropriate footwear available in the commissary and issued a medical pass that would enable Plaintiff to order footwear from an outside vendor.

Given that Plaintiff alleges Warden Martin and Dr. Feder together initially denied his request, it appears Warden Martin relied on the medical opinions of Dr. Feder. Prison administrators are entitled to rely on the opinions of medical staff concerning the medical treatment of inmates. *See Wood v. Dill*, No. 9:21-CV-0107(GTS/ML), 2022 WL 18402298, at *8 (N.D.N.Y.

Nov. 29, 2022) (collecting cases finding that non-medical professional entitled to rely on opinions of medical staff). The Fourteenth Amendment deliberate indifference claim against Warden Martin is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

A little more than a month later, Warden Martin and Dr. Feder reviewed the available footwear and determined that Plaintiff should be permitted to order sneakers from an outside vendor. It is not entirely clear from Plaintiff's allegations whether the denial of high-top sneakers and an orthopedic lift in some way caused the abscess that later required surgery, but Plaintiff does allege that the lack of these items caused him to walk on the front of his foot, which then became swollen and later infected. Drawing all inferences in favor of Plaintiff, the Court will assume that Dr. Feder's initial denial of Plaintiff's request for the sneakers and lift may have caused the ensuing problems, particularly since those problems arose in the period between Dr. Feder's initial denial of the request and her later course reversal. If Dr. Feder was reckless in denying Plaintiff his footwear accommodations, she could be liable for deliberate indifference under the Fourteenth Amendment. Thus, for initial review purposes, Plaintiff's Fourteenth Amendment deliberate indifference claim against Dr. Feder may proceed.

### 4. Nurse Phillips

Plaintiff alleges that, at the request of Dr. Feder, Nurse Phillips investigated the failure of prison staff to deliver Plaintiff's footwear to him. Plaintiff alleges that he ordered the footwear "on or about the ending of July" 2020, ECF No. 1 ¶ 34, addressed the issue with Dr. Feder 45 days after the footwear was delivered to the facility, and received the footwear at the end of August 2020, at which time he was housed in a different correctional facility. Allowing time for the order to be filled and delivered and accounting for the 45 days Plaintiff waited to address the issue with

Dr. Feder, it appears that Plaintiff received his footwear within days after the matter was referred to Nurse Phillips. Plaintiff's allegations thus do not show that Nurse Phillips recklessly failed to act with reasonable care in having Plaintiff's footwear delivered to him. The Fourteenth Amendment deliberate indifference claim against Nurse Phillips is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 5. *Nurse Carlie*

Although Plaintiff includes Nurse Carlie as a defendant, he fails to mention her in his statement of facts. As Plaintiff alleges no facts showing that Nurse Carlie deliberately ignored or recklessly failed to act with reasonable care in addressing Plaintiff's medical needs, he fails to state a plausible claim against Nurse Carlie. Any claim against Nurse Carlie is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B. Fourteenth Amendment (Due Process)

Plaintiff alleges that Brennan denied him due process by improperly processing his grievances. Although he alleges that Brennan also is a nurse, the only claim asserted against her is in her role as grievance coordinator. Plaintiff also alleges that Warden Martin failed to respond to a grievance sent to him.

The Supreme Court has never held that the Constitution requires state prisons to have formal grievance procedures. In *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures. The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right. However, neither state policies nor state statutes create federally

11

protected due process entitlements to specific state-mandated procedures." *Id*. at 13 (summary order) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and ellipsis omitted); *see also Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance or to have a grievance properly processed.").

As Plaintiff has no constitutional rights to have his grievance properly processed, his Fourteenth Amendment due process claim against Brennan fails as a matter of law and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Likewise, to the extent he alleges a Fourteenth Amendment due process claim against Warden Martin, it is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### C. Eleventh Amendment

Plaintiff generally alleges that Defendants' deliberate indifference to his medical needs also violated his Eleventh Amendment rights. The Eleventh Amendment to the United States Constitution bars "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (citation omitted). It does not create any rights for individual litigants.

Additionally, to the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Accordingly, any claim for violation of rights under the Eleventh Amendment is dismissed, and all official capacity claims are dismissed, pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, Plaintiff requests, as a form of relief, that he be awarded the opportunity to "continue pain management." ECF No. 1 at 25. The Court construes this as a request for injunctive

relief. Under *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a suit against a state official in his or her official capacity when that suit seeks prospective injunctive relief. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Plaintiff is no longer housed at Corrigan, however, so Plaintiff's request for injunctive relief against the Defendants named in this suit is moot. *Salahuddin*, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility").

    D. <u>ADA</u>

Plaintiff contends that his rights under the ADA were violated because he was denied his sneakers and orthopedic lift. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 121342. To state a cognizable ADA claim, Plaintiff must establish three elements: (1) he is a qualified person with a disability, (2) the defendants in their individual or official capacities are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Title II of the ADA does not provide "for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Therefore, any individual capacity claims under the ADA are dismissed, pursuant to 28 U.S.C. § 1915A(b)(1).

As to official capacity claims, the Court is aware that it is presently unsettled in the Second Circuit whether a plaintiff may assert a Title II ADA damages claim against a state actor in his or

her official capacity, and, if so, under what circumstances such a claim can be maintained. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193–95 (2d Cir. 2015) (recognizing uncertainty, after the decision in *United States v. Georgia*, 546 U.S. 151 (2006), about the extent to which Congress validly abrogated state sovereign immunity under Title II and about the continuing validity of the Second Circuit's decision in *Garcia*, 280 F.3d at 111–12, on this issue). Plaintiff alleges that he has a foot deformity and requires his high-top sneakers and orthopedic lift to walk properly. For purposes of initial review, the Court assumes that Plaintiff is a qualified person with a disability. Additionally, the ADA applies to state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S 206, 209 (1998) (holding that the ADA "unmistakably includes State prisons and prisoners within its coverage."). Thus, the issue is whether Plaintiff has been discriminated against because of his disability.

There are three theories an individual may use to establish the third element of an ADA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted); *see Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (explaining that the ADA requires that "covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities" (internal quotation marks and citation omitted)).

Reading the complaint liberally, the Court infers that, after Plaintiff's sneakers and orthopedic lift were confiscated, he was not able to participate in programs run by the prison, because he could not ambulate properly. In denying him the use of the sneakers and lift for a

period of time, Dr. Feder and Warden Martin failed to reasonably accommodate Plaintiff's alleged disability. For purposes of initial review, Plaintiff's complaint adequately alleges each of the requisite elements of a claim under the ADA against Dr. Feder and Warden Martin.

Due to the uncertainty concerning whether damages actions under the ADA are cognizable against state defendants in their official capacity, however, the Court believes that any decision regarding whether sovereign immunity bars Plaintiff's ADA claim against these Defendants in their official capacity should be determined after operation of the adversarial process. Thus, the ADA claim against Dr. Feder and Warden Martin in their official capacity will be allowed to proceed past initial review; if Defendants believe such claims to be prohibited, they are encouraged to file a motion to dismiss presenting this argument.

## ORDERS

All claims under the Eleventh and Eighth Amendments, the Fourteenth Amendment due process claim, and the Fourteenth Amendment claims for deliberate indifference to medical needs against Defendants Carlie, Phillips, and Martin, are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The case will proceed on the Fourteenth Amendment deliberate indifference to medical needs claims against Defendants Doe, Yvonne, Cristien, Jullian, and Dr. Feder in their individual capacities for damages only. It will also proceed as to Plaintiff's ADA claim against Dr. Feder and Warden Martin in their official capacities, also for damages only.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

**OPTION ONE**

If Plaintiff wishes to proceed immediately on the claims against Defendants Doe, Yvonne,

Cristien, Jullian, Feder, and Martin only as set forth above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket by November 10, 2023, informing the court that he elects to proceed with service as to the claims against these Defendants on these claims. The court will then begin the effort to serve process on these Defendants. As to the Doe Defendant, the Clerk will not be able to serve the complaint on RN Jane Doe because Plaintiff has not provided the first or last name for this defendant. If Plaintiff elects to proceed under this option, Plaintiff will have ninety (90) days from the date of appearance of counsel of the first Defendant to appear in this action to file a notice identifying Defendant Doe by her first and last name.

**OPTION TWO**

Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed, in order to attempt to state a viable claim, he may file an Amended Complaint by November 10, 2023. An Amended Complaint, if filed, will completely replace the Complaint and the court will not consider any allegations made in the Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an Amended Complaint, the Complaint this Initial Review Order addressed will <u>not</u> proceed to service of process on any Defendant.

If the Court receives no response from Plaintiff by November 10, 2023, the Court will presume that Plaintiff wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will need to show good cause if he seeks to amend the complaint in any manner in the future.

**Change of Address**. If Plaintiff changes his address at any time during the litigation of

this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address, if Defendants have appeared through counsel.

**SO ORDERED** at Hartford, Connecticut, this 11th day of October, 2023.

                                               */s/ Sarala V. Nagala*
                                              SARALA V. NAGALA
                                              UNITED STATES DISTRICT JUDGE