UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LaDEAN DANIELS, *Plaintiff*, | ) ) ) | 3:23-cv-441 (SVN) |
| v. | ) ) | |
| FEDER, *et al.*, *Defendants*. | ) ) ) ) | December 27, 2024 |

**<u>RULING ON MOTION TO DISMISS FILED BY DEFENDANTS MARTIN AND FEDER</u>**

*Pro se* Plaintiff LaDean Daniels, currently a sentenced inmate,[1] brings this action pursuant to 42 U.S.C. § 1983 asserting claims for deliberate indifference to his medical needs under the Fourteenth Amendment and for violation of his rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, while he was a pretrial detainee. In its Initial Review Order, the Court allowed Plaintiff to proceed, in relevant part, with his Fourteenth Amendment claim against Defendant Feder in her individual capacity for damages, and with his ADA claim against Defendants Feder and Martin (the warden of the pertinent facility), in their official capacities, for damages.[2]

Defendants Feder and Martin ("Defendants") have filed a motion to dismiss the claims asserted against them. For the following reasons, Defendants' motion to dismiss is denied in part, as to Plaintiff's Fourteenth Amendment claim against Defendant Feder relating to denial of his

---

[1] The Connecticut Department of Correction's inmate locator notes that Plaintiff is currently incarcerated at MacDougall-Walker Correctional Institution and was sentenced on June 28, 2024. Thus, when the incidents underlying this action occurred in 2020, Plaintiff was a pretrial detainee. The Court takes judicial notice of this relevant matter of public record. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *see Goss v. City of New London*, No. 3:20-CV-01507(SALM), 2022 WL 375462, at *1 n.1 (D. Conn. Feb. 8, 2022) (taking judicial notice of the date the plaintiff was sentenced according to the State of Connecticut DOC Inmate Information website).

[2] The Court also allowed Plaintiff to proceed with claims against other Defendants.

orthopedic footwear, and granted in part, as to his Fourteenth Amendment claim against Feder relating to treatment of his abscess and as to his ADA claims against Defendants Feder and Martin.

## I.     RELEVANT BACKGROUND

The Court includes only those facts relating to Defendant Feder's treatment, the ADA claim, and those providing necessary background.

The incidents underlying this action occurred while Plaintiff was confined at Corrigan Correctional Center ("Corrigan"). Plaintiff suffers from a foot deformity, a short leg, degenerative disc disease of the lumbar spine, sciatica, and neuropathy on the right side of his body. Compl., ECF No. 1 at 24. He also has been diagnosed with PTSD, anxiety associated with depression, bipolar disorder, and antisocial personality disorder. *Id.* ¶ 3.

Upon his arrival at Corrigan on May 14, 2020, staff confiscated his high-top sneakers and orthopedic lift. *Id.* ¶¶ 1–2. When Plaintiff explained that he was unable to walk well without his lift and adequate footwear, he was told the medical department would need to approve the sneakers and lift. *Id.* ¶¶ 3–4. That evening, Plaintiff was told that medical staff had determined that his footwear was not medically needed. *Id.* ¶ 7.

At some point in May of 2020, Plaintiff stopped Warden Martin while he was touring the restrictive housing unit and complained about his medical treatment. *Id.* ¶ 23. Warden Martin told Plaintiff to send him a request form and he would look into the matter. *Id.* On June 5, 2020, Warden Martin responded to Plaintiff's May 31, 2020, request form. *Id.* ¶ 24. Warden Martin stated that he and Dr. Feder had inspected Plaintiff's orthopedic lift and sneakers and determined that they did not fit his medical needs. *Id.* Warden Martin, therefore, denied Plaintiff's request for the lift and shoes. *Id.*

Plaintiff's ankle does not bend and, as a result, he walks on the front part of his foot. *See*

*id.* ¶ 10.  At some point in May of 2020, Plaintiff developed a swollen front foot and an abscess that caused him extreme pain.  *Id.* ¶¶ 10–12, 16.  Plaintiff's medical complaints were dismissed by correctional officers and nurses.  *Id.* ¶¶ 14–16.

At first, nurses treated Plaintiff's abscess with antibiotics and a Band-Aid and told Plaintiff he did not need to see a doctor.  *Id.* ¶¶ 18–19.  On May 29, 2020, a nurse admitted Plaintiff to the medical unit to receive IV antibiotics to treat the infection, but would not send him to the hospital.  *Id.* ¶¶ 21–22.

On June 1, 2020, Plaintiff was taken to the emergency room, where he underwent emergency surgery on his foot.  *Id.* ¶ 25.  Following surgery, Plaintiff underwent several weeks of rehabilitation, during which he was hopping on one foot, which affected his other conditions.  *Id.* ¶ 27.  The surgery left Plaintiff with numbness in his foot and toes and muscle and nerve pain in his foot.  He became dependent on pain management to walk.  The way he walked caused his hip to become misaligned and caused severe nerve pain and chronic muscle spasms.  *Id.* ¶ 28.

In late July of 2020, Warden Martin and Dr. Feder determined there was no appropriate footwear in the commissary and issued a medical pass permitting Plaintiff to order footwear from an outside vendor.  *Id.* ¶ 32.  Plaintiff ordered black high-top sneakers from an approved catalog, but custody staff refused to release the sneakers to Plaintiff despite the medical pass.  *Id.* ¶¶ 34–35.

When Plaintiff's footwear had not been issued to him for over a month, he spoke with Dr. Feder, who said she would look into the situation and asked Plaintiff to send her a follow-up request.  *Id.* ¶ 37.  Dr. Feder responded to the request and said that Nurse Supervisor Phillips would deal with the issue.  *Id.* ¶ 38.  Plaintiff finally received the sneakers at the end of August 2020, after he had been transferred to another facility.  *Id.* ¶ 39.

## II.      LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

### III.    DISCUSSION

The Court denies the motion to dismiss as to the Fourteenth Amendment deliberate indifference claim against Defendant Feder related to the delay in providing Plaintiff his requested footwear and orthopedic lift, but grants it as to Plaintiff's ADA claim against Defendants Feder and Martin.

#### A.    Fourteenth Amendment Claim for Deliberate Indifference to Medical Needs

To state a Fourteenth Amendment claim for deliberate indifference to serious medical needs, a detainee first must show that his medical need was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. A "sufficiently serious" deprivation can exist if the detainee suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Additionally, a medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury

or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2003). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worth of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998).

When the claim is based on a delay or interruption in treatment rather than a denial of treatment, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). It is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for [these] purposes." *Id*. (citing *Chance*, 143 F.3d at 702–03 (2d Cir. 1998)). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187 (citations omitted).

The conduct of the defendants is considered objectively. "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (internal quotation marks omitted)). "Deliberate indifference requires, at a minimum, culpable recklessness, *i.e.*, an act or a failure to act that evinces a conscious disregard

of a substantial risk of serious harm." *Darby*, 14 F.4th at 128 (citation and internal quotation marks omitted); *see also Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) ("[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."). Negligence is insufficient to satisfy this component. *See Darnell*, 849 F.3d at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently). However, courts frequently consider "the degree of risk associated with the negligent treatment," and have found reckless conduct where the plaintiff did not receive treatment for a documented injury. *King v. Falco*, No. 16 CV 6315 (VB), 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (citing cases).

Plaintiff's complaint can be read to assert two medical claims against Dr. Feder: improper treatment for the abscess and delay in ordering the special footwear and orthopedic lift.

With respect to the abscess, the Court considers the abscess and resulting need for surgery to state a serious medical need. In his complaint, Plaintiff does not allege that Dr. Feder was involved in the treatment of (or even knew about) the abscess. Rather, he alleges that Dr. Feder was involved with denial of his orthopedic shoes and lift. In opposition to the motion to dismiss, however, Plaintiff states that he wrote to Dr. Feder about the abscess, but she did not respond. Pl.'s Opp. Br., ECF No. 65 at 4. While Plaintiff does not provide the date of this communication, he states that Dr. Feder noted in Plaintiff's medical file "that the footwear and lifts requested may cause further injury to Plaintiff's infected foot." *Id.* Plaintiff therefore contends that he has stated a deliberate indifference claim against Dr. Feder because she knew about his foot infection and did nothing to treat it.

The Court holds that Plaintiff has not stated a plausible Fourteenth Amendment claim against Dr. Feder related to treatment (or lack thereof) of the abscess.  First, a plaintiff cannot amend his complaint through a memorandum opposing a motion to dismiss.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff cannot amend complaint through memorandum filed in opposition to dispositive motion); *Purugganan v. AFC Franchising, LLC*, No. 3:20-CV-00360 (KAD), 2021 WL 5301522, at *4 (D. Conn. Nov. 15, 2021) (plaintiff cannot amend complaint through memorandum).  When seeking an extension of time to respond to the motion to dismiss, Plaintiff informed the Court that he might file an amended complaint, but he ultimately chose not to do so.  *See* ECF Nos. 63, 64.  Thus, he was aware of his ability to amend in response to the motion to dismiss.  Had he filed an amended complaint, he could have included further allegations about what Dr. Feder knew about his abscess and when.  Without such allegations, however, there is an insufficient basis to allow the Fourteenth Amendment deliberate indifference claim regarding treatment of the abscess to proceed against Dr. Feder.  The motion to dismiss is therefore granted in this respect.

The second medical claim is the denial of special footwear. Plaintiff contends that Dr. Feder was deliberately indifferent, in part because his medical records from prior periods of incarceration showed that he had been permitted special footwear.  According to Plaintiff's complaint, Dr. Feder denied the footwear in response to the May 31, 2020, request, but then determined that Plaintiff should be permitted to order special footwear less than two months later.  Thus, Plaintiff's claim against Dr. Feder is based on a delay in treatment, not a denial of treatment.

The Court concludes that, drawing all reasonable inferences in Plaintiff's favor, he has stated a deliberate indifference claim against Dr. Feder with respect to her denial of medical footwear for him.  Plaintiff alleges that he needed the special footwear for his deformed foot, and

that, because his ankle does not bend, he walks on the front part of his foot. It is reasonable to infer, at this stage, that the special footwear mitigates this issue. Without the special footwear, Plaintiff walked on the front part of his foot, which then developed the abscess and ultimately required surgery. Therefore, when reasonable inferences are drawn in his favor, Plaintiff has made a sufficient link between Dr. Feder's denial of his special footwear and his later medical problems resulting from the abscess. *See* Pl.'s Opp. Br., at 4 ("[T]he result was Plaintiff developing an abscess in his foot due to the deprivation of adequate footwear."). Although Plaintiff states in his memorandum that Dr. Feder noted the special footwear may exacerbate the infection rather than ameliorate it, *id.*, that is a factual issue to be explored during discovery. For these reasons, the motion to dismiss the Fourteenth Amendment claim against Dr. Feder relating to her denial of special footwear for Plaintiff is denied.

    B.    <u>ADA Claim</u>

The Court grants the motion to dismiss as to Plaintiff's ADA claim against Defendants Feder and Martin.

Plaintiff's ADA claim is based on the denial of his shoes and lifts upon admission to custody. He contends that this denial was a failure to reasonably accommodate his disability and alleges that "he could not ambulate well without adequate footwear." Compl., ¶ 3. In the Initial Review Order, the Court "infer[red] that, after Plaintiff's sneakers and orthopedic lift were confiscated, he was not able to participate in programs run by the prison, because he could not ambulate properly." ECF No. 22 at 14. The Court also noted the uncertainty in the law regarding whether damages actions are cognizable under the ADA against state officials in their official capacity. *Id.* at 15. The Court expressed its preference that such a claim be determined through operation of the adversarial process and invited Defendants to file a motion to dismiss presenting

this argument if they viewed the claims to be prohibited. *Id.*

To state a cognizable ADA claim, Plaintiff must establish three factors: (1) he is a qualified person with a disability, (2) the defendants in their individual or official capacities are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). In their motion, Defendants argue that Plaintiff fails to allege facts supporting the third factor, both because he fails to allege he was denied the opportunity to participate in programs or service and because he does not allege he was discriminated against *because of* his disability.

There are three theories an individual may use to establish the third element of an ADA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009); *see also Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (explaining that the ADA requires that "covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities") (citation omitted)).

Defendants correctly note that Plaintiff does not identify even one program or service he was unable to attend because he could not ambulate. Again, Plaintiff could have amended his complaint to identify such programs to correct the deficiencies identified in the motion to dismiss. Although he was aware of his ability to amend, he did not do so. In addition, the Court agrees with Defendants that Plaintiff has not adequately alleged that he was discriminated against because of his disability. Plaintiff appears to claim that Defendants failed to accommodate his disability because they did not immediately provide special footwear that had been medically authorized for

him during previous periods of incarceration. However, the ADA "do[es] not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided." *CERCPAC v. Health & Hosps. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988).

For these reasons, Plaintiff fails to state a cognizable ADA claim. In light of this conclusion, the Court need not address the complicated question of whether damages are available from Defendants in their official capacity on an ADA claim.

## IV. CONCLUSION

Defendants' motion to dismiss, ECF No. 57, is denied in part, as to the Fourteenth Amendment deliberate indifference claim raised against Defendant Feder regarding the delay in providing Plaintiff with his requested special footwear; and granted in part, as to the Fourteenth Amendment deliberate indifference claim alleged against Defendant Feder regarding treatment for the abscess and as to Plaintiff's ADA claim against Defendants Feder and Martin.

As all claims against Defendant Martin are now dismissed, the Clerk is directed to terminate him from this action.

The parties' dispositive motions are due February 25, 2025. *See* Order, ECF No. 73.

**SO ORDERED** at Hartford, Connecticut, this 27th day of December, 2024.

                                                /s/ Sarala V. Nagala
                                                SARALA V. NAGALA
                                                UNITED STATES DISTRICT JUDGE